IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MICHAEL KRAWCZYK,

                                        OPINION AND ORDER

       Plaintiff,

                                            20-cv-82-bbc

     v.

ANDREW SAUL, Commissioner of
Social Security,

       Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

     Plaintiff Michael Krawczyk seeks review of a final decision denying his claim for disability insurance benefits under the Social Security Act, 42 U.S.C. § 405(g), for the period from December 31, 2014 to June 30, 2017. He contends that the administrative law judge hearing his case erred in two respects: not properly assessing his mental residual functional capacity and failing to consider the medical opinion of a consultative examining doctor, Dr. Neil Johnson. Plaintiff believes that these errors led to the denial of the full amount of benefits to which he is entitled. For the reasons that follow, I find plaintiff's contentions unpersuasive and am affirming the administrative law judge's decision.

     The following facts are drawn from the administrative record (AR).

BACKGROUND FACTS

     Plaintiff was born on March 8, 1954. He applied for disability insurance benefits in May 2016, when he was 62 years old. AR 13, 41. His application was denied initially, but

1

on reconsideration, the state agency determined that he had mental impairments that rendered him disabled as of July 1, 2017. AR 94. Seeking a longer term of disability, plaintiff asked for and was granted a hearing before an administrative law judge (ALJ), at which plaintiff contended that he had actually been disabled since December 31, 2014, by his various physical and psychological problems, including chronic low back pain and depression. AR 124.

### A.  Hearing Testimony

At a January 15, 2019 hearing before the ALJ, plaintiff testified that since 1994 or 1993, he had had back pain in the area just above his belt line that had worsened over the years. AR 43-44. He had received treatment, primarily with medicine and muscle relaxers, AR 44-45, but he said he was always in pain. AR 45. He told the ALJ he could not go up a ladder, could not bend down and could not lift more than 15 pounds on a regular repetitive basis, without feeling severe pain. AR 45-46. He said also that in the previous four to five years, the pain had been consistent, AR 45, allowing him to sit for only 45 minutes to an hour before he had to stand up and stretch his back. AR 46. Plaintiff added that he could stand for 15 minutes, at most, before the pain forced him to bend forward or sit down again, and he could not walk more than 5 minutes at a time. AR 46-47.

When asked about the medication he took, plaintiff said it only helped him fall asleep so that he would not feel the pain. AR 48. He also testified that he did no chores around his house, including laundry, but could do a small amount of vacuuming before he had to stop.

AR 50.  He did no yard work.  AR 50-51.  He took his wife shopping but did not shop himself and had no outside activities or vacations.  AR 51.

Plaintiff also said he has been treated for depression since about a month after his back injury. AR 51-52. When asked specifically how his depression had been in 2014, at the start of the period for which he wanted benefits, plaintiff said he had not wanted to do anything or talk to anyone and he felt worthless.  He had been prescribed Paxil and found it helped a bit.  AR 52.  He added that his attention deficit disorder (ADD) caused him to start things and then leave them unfinished. AR 53. In 2015 or 2016, plaintiff quit working completely. AR 54.

When questioned about his medical problems, plaintiff said he had emphysema, but it was at an early stage and had not been treated.  AR 57.  He said that his right shoulder was in constant pain and had been that way since he first hurt his back and that he has had no surgery for either his back or his shoulder.  Id.  Before he stopped working completely, he had worked as a painter and had done light maintenance work.  AR 59.

## B.  Opinion Evidence

1.  Dr. Neil Johnson

Dr. A. Neil Johnson completed an examination of plaintiff on May 18, 2017 at the request of the Disability Determination Services for Social Security claims and concluded that plaintiff had chronic back pain, as well as pain in his right shoulder and right knee.  AR 287-91.  Dr. Johnson observed tenderness over plaintiff's lumbar spine, but "did not appreciate

3

any definite spasm," and he said that plaintiff's straight leg raising was negative. AR 288. Dr. Johnson also observed that plaintiff's motor strength was 5/5, he had intact sensation of his left leg and his reflexes were symmetrical. AR 290.

Dr. Johnson noted that plaintiff had injured his back in 1994, while lifting a railroad tie, and had thereafter declined surgery. AR 290. He had persistent back pain, moderate loss of flexion, some tenderness in his lower back, with no sign of nerve root irritation. Id. The doctor found it likely that plaintiff had degenerative disc disease. Id. He found also that plaintiff had mild to moderate impingement to his right shoulder; discomfort at the right knee but full range of motion at the knees; mild crepitus of the right knee; and the ability to walk normally without an assistive device. AR 290-91. He noted that plaintiff had reported having emphysema and he found plaintiff's "breath sounds" mildly decreased. AR 291.

As part of his examination, Dr. Johnson had x-rays taken of plaintiff's right knee and lumbar spine. The x-ray of the knee showed no acute traumatic or intrinsic abnormalities, well-maintained joint spaces and intact surrounding soft tissues. AR 294. The x-rays of plaintiff's lumbar spine showed satisfactory vertebral height and alignment, mild to moderately advanced spondylosis (age-related wear and tear on spinal disks in the neck), arthritis, primarily in the two spaces between L4 and S1; mild lower lumbar arthrosis (a type of arthritis that occurs when flexible tissue at the end of bones wears down); and no other abnormalities affecting the posterior elements. Id. He did not offer any opinion on plaintiff's functional capacity.

2. <u>Joseph Roe, Psy. D.</u>

Psychologist Joseph Roe conducted a psychological evaluation of plaintiff in May 2017. AR 304-08. His diagnostic impression was that plaintiff had a major depressive disorder, recurrent, severe, and without psychotic features; a generalized anxiety disorder; and attention deficit disorder. AR 307. Roe found plaintiff highly cooperative, oriented to person and place and having coherent speech and adequate remote and recent memory. AR 304-05. Dr. Roe believed that plaintiff could understand and remember simple instructions and get along with co-workers and supervisors. AR 307. He also found that plaintiff had poor concentration, inability to focus or pay attention, no endurance, would not be able to withstand simple life stressors or the stresses in the workplace, would not maintain a normal work pace and could not adapt to changes. <u>Id</u>.

3. <u>State agency reviewing consultants</u>

At the initial level of review on June 26, 2017 and the reconsideration level of review on October 26, 2017, state agency medical consultants Dr. George Walcott and Dr. Mina Korshidi found that plaintiff was capable of unlimited medium exertional level work. AR 75-76, 84, 90-91. Also, at the initial level of review, state agency psychologist Esther Lefevre, Ph.D., found plaintiff's mental impairments to be non-severe. AR 73. However, at the reconsideration level of review some months later, Dr. Therese Harris, Ph.D., found that plaintiff had a marked limitation in the ability to concentrate, persist or maintain pace and moderate limitations in the abilities to understand, remember or apply information and adapt

5

or manage oneself. AR 87.

### C. ALJ's Decision

In assessing plaintiff's alleged disability, the ALJ followed the Social Security Administration's sequential evaluation process. At step one, he found that plaintiff had not engaged in any substantial gainful activity since December 31, 2014. AR 15. At steps two and three, he found that plaintiff had the severe impairments of degenerative disc disease, right shoulder impingement, depressive disorder, attention deficit disorder and anxiety disorder, but that none of these impairments met or medically equaled the criteria of a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1. AR 15-16.

In assessing the severity of plaintiff's mental impairments using the "paragraph B" criteria in the listings, the ALJ found that plaintiff had mild limitations in understanding, remembering or applying information, interacting with others and adapting or managing oneself, and a moderate limitation in concentration, persistence or pace. AR 17. The ALJ noted that although plaintiff could drive, shop online and watch television, he could not concentrate while reading. As a result, he stated that he would limit plaintiff to simple, routine tasks. AR 17.

At step four, the ALJ concluded that plaintiff has the residual functional capacity (RFC) to perform medium level work, except that he could never climb ladders, ropes or scaffolds and was limited to simple, routine tasks with no fast-paced production requirements. AR 18. In reaching this determination, the ALJ reviewed the reports of plaintiff's visits to doctors from

November 2014 through August 2016 and the opinion evidence. AR 19-20.

The ALJ gave "significant weight" to the opinions of state agency medical consultants Dr. Walcott and Dr. Korshidi that plaintiff was capable of medium level work, finding the opinions consistent with the medical evidence that plaintiff has no acute traumatic or instrinsic osseous abnormalities in his right knee, has only generalized mild to moderate spondylosis in his lumbar spine, could move all his extremities and exhibited normal gait, strength and station. AR 20. In the ALJ's opinion, the postural limitation of never climbing ladders, ropes or scaffolds was appropriate based on plaintiff's pain and decreased range of motion in his right shoulder. Id.

The ALJ gave some weight to Dr. Roe's opinion regarding plaintiff's mental functioning. He found support for Roe's assessment that plaintiff could understand and remember simple instructions and get along well with supervisors and co-workers, but he found that the medical record did not support Roe's social restrictions for plaintiff or the extreme limitations related to focus, attention, pace or adaptation. AR 20. The ALJ also gave little weight to the opinions of state agency psychological consultants Drs. Lefevre and Harris because he found their opinions inconsistent with the rest of the medical evidence. AR 20-21.

With respect to plaintiff's mental impairments, the ALJ found it significant that plaintiff had continued to work during the relevant period (from December 31, 2014 to June 30, 2017); his ADD was fairly controlled and his depression was well controlled by medication; and at several examinations, he showed no evidence of depression or anxiety, even denying it on several occasions. AR 19-21 (citing Nov. 17, 2014, Dec. 22, 2015, Aug. 15,

2016 and Feb. 27, 2017 reports of Glenda Way, nurse practitioner, at AR 312-30).  The ALJ also noted that during these visits, plaintiff was consistently alert; oriented to person, place and time; in no acute distress; and pleasant and cooperative, with clear speech.  Id.

At step four, the ALJ found that plaintiff had no prior relevant work.  AR 22.  At the last step in the sequential evaluation process, the ALJ relied on the opinion of the vocational expert who testified that jobs existed in significant numbers for a person of plaintiff's age, education, work experience and RFC, including laundry laborer, linen room attendant and counter supply worker.  Id.

## OPINION

Plaintiff contends that the ALJ erred in two respects:  (1) failing to consider the medical opinion of Dr. Neil Johnson; and (2) not properly assessing plaintiff's mental residual functional capacity.  I will consider each contention, keeping in mind that it is plaintiff's burden to prove that he has an impairment that meets the duration requirement of at least 12 months and is so severe that it prevents him from performing any work.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 147 (1987)("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require.").  The task for the court is to determine whether the ALJ's decision is supported by substantial evidence; that is, only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019).

A. Dr. Johnson's Opinion

Plaintiff contends that the ALJ committed reversible error in failing to consider Dr. Johnson's May 18, 2017 report, and in particular, his opinion that plaintiff could lift up to 20 pounds. Plaintiff argues that a 20-pound lifting restriction, which equates to light level work, would mean that the Medical-Vocational Guidelines (or "grids") compel a finding that he is disabled. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 202.04 (person closely approaching retirement age of 60 or older with high school education, no past relevant work and limited to light level work is disabled).

Plaintiff has not set forth any evidence to support his claim that the ALJ ignored Dr. Johnson's medical report or opinion regarding plaintiff's lifting ability. The ALJ discussed and summarized Dr. Johnson's May 2017 consultative examination in detail in his written decision. AR 19. Although the ALJ did not say whether he assigned any particular weight to the doctor's report, Dr. Johnson did not state any opinion with respect to plaintiff's work apacity or limitations. The lifting "restriction" referred to by plaintiff is mentioned in the doctor's recitation of plaintiff's "chief complaints," which included plaintiff's self-report that he could lift about 20 pounds. Dr. Johnson never stated the opinion that plaintiff could lift only 20 pounds.

Plaintiff seems to be objecting to the ALJ's failure to treat plaintiff's subjective complaint as a fact or limitation found by the doctor. However, plaintiff's subjective complaints are not the equivalent of "findings" made by a doctor. As the commissioner points out, the ALJ did not accept all of plaintiff's subjective complaints, AR 18, and reasonably

9

relied on the state agency physicians' opinions that plaintiff was capable of performing medium-level work. Plaintiff has not challenged those findings and has waived the arguments by not raising them on appeal. Schomas v. Colvin, 732 F.3d 702, 707 (7th Cir. 2013) (argument that is not raised is waived).

B. Mental Impairments

In a brief argument, plaintiff contends that the ALJ's RFC finding was inconsistent with the opinions of the opinions of Drs. Harris and Roe, who found that plaintiff would have extreme limitations based on his poor concentration and inability to pay attention, maintain a normal work pace and withstand stresses or changes in the workplace. However, as defendant points out, the ALJ provided sound and well-supported reasons for not crediting those opinions. He noted that plaintiff had continued to work during the relevant period; his ADD and depression were controlled by medication; and at several examinations, he showed no evidence of depression or anxiety, even denying it on several occasions.

Plaintiff did not develop any argument challenging the ALJ's analysis of the opinions of Drs. Harris and Roe, and he did not respond to defendant's arguments on this issue in his reply brief. Accordingly, plaintiff has waived his argument by failing to develop it in any meaningful way. Williams v. Dieball, 724 F.3d 957, 961 (7th Cir. 2013) (arguments waived if perfunctory, underdeveloped, or raised for the first time in a reply brief).

Citing Yurt v. Colvin, 758 F.3d 850, 858-59 (7th Cir. 2014), plaintiff states in conclusory fashion that the ALJ's limitation of simple, routine tasks fails to account for

plaintiff's mental health limitations because "the Seventh Circuit has repeatedly rejected the notion that limiting a claimant to unskilled work adequately account[s] for mental function limitations." Dkt. #9 at 9. Although plaintiff fails to explain this argument, I assume that he is referring to the fact that the ALJ found that plaintiff had a moderate limitation in concentration, persistence or pace but did not account for it. Contrary to plaintiff's suggestion, the court of appeals did not hold in Yurt or any other case that a restriction to simple, routine tasks is *never* an accurate reflection of moderate limitations in concentration, persistence or pace or any other functional area. Rather, the court of appeals has made clear that the ALJ's residual functional capacity assessment must reflect the claimant's particular limitations. The phrase "moderate limitations in concentration, persistence or pace" does not mean the same thing across all cases. As this court has explained before, "the phrase is simply a general category" that "must be translated into particular limitations;" the phrase "does not necessarily communicate . . . what a claimant can or cannot do." Rossenbach v. Colvin, No. 13-cv-435-bbc, 2014 WL 1729096, at *2 (W.D. Wis. Apr. 30, 2014). Therefore, the residual functional capacity determination in this case is not inadequate simply because it includes a restriction to "simple, routine tasks." The question is whether those restrictions are an accurate reflection of plaintiff's limitations.

As defendant points out, plaintiff has not explained why the residual functional capacity determination is inadequate or identified what additional restrictions might have addressed his limitations. Jozefyk v. Berryhill, 923 F.3d 492, 498 (7th Cir. 2019) (remand not warranted where claimant fails to identify what work restrictions might address her limitations); Lockett

11

v. Saul, No. 20-1564, 2020 WL 6445068, at *3 (7th Cir. Nov. 3, 2020) ("Lockett cannot show a need for pace-specific restrictions in his residual functional capacity simply because of the 'moderate' designation; he must have evidence of that need, and he cites none."). In his written opinion, the ALJ explained that he was limiting plaintiff to simple, routine tasks with no fast-paced production requirements in order to account for the "poor concentration and lack of attention" that he displayed during Dr. Roe's consultative examination. AR 20. Plaintiff has not challenged this reasoning or responded to defendant's contention that the ALJ's analysis was reasonable and supported by substantial evidence, including plaintiff's limited treatment records, Dr. Roe's opinion that plaintiff could understand and remember simple instructions and plaintiff's ability to continue working after his alleged onset date. See Jozefyk, 923 F.3d at 498 (finding ALJ "tied the record evidence to the limitations included in the RFC finding" that "adequately account[ed] for the claimant's demonstrated psychological symptoms"). As with his previous argument, plaintiff has waived his argument by not developing it or responding to defendant's contention that the ALJ adequately explained the basis for the residual functional capacity limitations and tied the record evidence to those limitations.

In sum, I conclude that plaintiff has failed to meet his burden of showing that the ALJ committed reversible error. Accordingly, I am affirming the decision of the ALJ.


ORDER

IT IS ORDERED that the plaintiff Michael Bruno Krawczyk's appeal is DENIED and

the decision of defendant Andrew Saul, Commissioner of Social Security, is AFFIRMED. The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 7th day of December, 2020.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge